JMS:OO
F. #2022R00346

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     - against -

ERICK ESTRADA,
       also known as "Chico,"

            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

COMPLAINT AND
AFFIDAVIT IN SUPPORT
OF ARREST WARRANT

Case No. 22-MJ-445

(18 U.S.C. §§ 1959(a)(3) and 2)

EASTERN DISTRICT OF NEW YORK, SS:

        GABRIEL NACELEWICZ, being duly sworn, deposes and states that he is a Task Force Officer with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

        On or about December 31, 2021, within the Eastern District of New York, the defendant ERICK ESTRADA, also known as "Chico," together with others, for the purpose of gaining entrance to, and maintaining and increasing position in, the 18th Street gang, an enterprise engaged in racketeering activity, did knowingly and intentionally assault with a dangerous weapon John Doe 1, an individual whose identity is known to the affiant, in violation of New York Penal Law Sections 120.05(2) and 20.

    (Title 18, United States Code, Sections 1959(a)(3) and 2)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.      I am a Task Force Officer with the Federal Bureau of Investigation ("FBI") and have been for approximately three years.   I am currently assigned to the New York Metro Safe Streets Gang Task Force, where I investigate gangs, narcotics trafficking, firearms trafficking, robbery, kidnapping and other offenses.   These investigations are conducted both overtly and covertly.   I am also a Detective with the New York City Police Department ("NYPD") and have been employed by the NYPD for approximately 16 years. Through my training, education and experience, I have become familiar with the manner in which gang violence, narcotics distribution, robberies, firearms trafficking and other schemes are carried out, and the efforts of persons involved in such activity to avoid detection by law enforcement.

2.      I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file; and my interview of, discussions with, and reports of other law enforcement officers involved in the investigation. Where I describe the statements of others, I am doing so only in sum and substance and in part.

The Enterprise

3.      Based on information provided through the debriefing of cooperating witnesses and confidential informants, as well as speaking with other law enforcement

---

[1]      Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

agents, among others, I am aware of the following facts, among others, regarding the 18th Street gang ("18th Street" or the "Enterprise"), which existed at all times relevant to this Complaint.

4.     18th Street was a violent street gang with members located throughout Queens, New York, and elsewhere, divided into local chapters or "canchas."   Members and associates of 18th Street have engaged in acts involving murder, assault, narcotics trafficking and extortion, as well as other crimes.

5.     The 18th Street gang, including its leadership, membership and associates, constituted an "enterprise" as defined by Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce.   The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

6.     The 18th Street gang, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts and threats involving murder that are chargeable under New York Penal Law and punishable by imprisonment for more than one year, and offenses involving narcotics trafficking, punishable under Title 21, United States Code, Sections 841 and 846.

Purposes of the Enterprise

7.     The purposes of the Enterprise include the following:

(a)     Enriching the members and associates of the Enterprise through criminal activity, including narcotics trafficking and extortion;

(b)      Promoting and enhancing the prestige, reputation and position of the Enterprise through the use of intimidation, threats of violence and acts of violence, including acts involving murder and assault;

(c)      Preserving and protecting the power, territory and criminal ventures of the Enterprise through the use of intimidation, threats of violence and acts of violence, including acts involving murder and assault;

(d)      Keeping victims and rivals in fear of the Enterprise and its members and associates; and

(e)      Concealing the activities of the Enterprise from law enforcement.

<u>Means and Methods of the Enterprise</u>

8.      Among the means and methods by which members of 18th Street and their associates conducted and participated in the conduct of the affairs of the Enterprise were the following:

(a)      Members and associates of the Enterprise used, attempted to use and conspired to use drug trafficking and extortion as means of obtaining money;

(b)      Members and associates of the Enterprise committed, attempted to commit, threatened to commit and conspired to commit acts of violence, including acts involving murder and assault, to enhance the Enterprise's prestige and protect and expand the Enterprise's criminal operations; and

(c)      Members and associates of the Enterprise used and threatened to use physical violence against various individuals, including witnesses, victims and informants, and members of rival criminal organizations.

<u>The Defendant</u>

9.     As set forth in further detail below, the defendant ERICK ESTRADA, also known as "Chico," was a member of 18th Street.

<u>Assault of John Doe 1</u>

10.     On or about December 31, 2021, at approximately 7:00 p.m., John Doe 1, a 28-year-old Hispanic male, whose identity is known to the affiant, was beaten with a glass bottle while standing in front of a location in the vicinity of Roosevelt Avenue and 82nd Street, in Queens, New York.   When NYPD officers arrived at the scene they found John Doe 1, who reported being attacked.   Thereafter, John Doe 1 was transported to Elmhurst General Hospital.

11.     I know, based on my training, experience and participation in the investigation, that the area in and around 82nd Street and Roosevelt Avenue in Queens, New York is the territory of the 18th Street cancha referred to as the "54 Tiny Locos."   Graffiti in the vicinity of 82nd Street and Roosevelt Avenue includes "X8," "18" and "54TL," which I believe, based on my training, experience and participation in this investigation, to be references to 18th Street and the 54 Tiny Locos.   I also know, based on my training, experience and participation in this investigation, that members of 18th Street seek to protect their territory by, among other means, committing acts of violence in their territory against perceived threats.

12.     John Doe 1 was subsequently interviewed by law enforcement.   John Doe 1 advised the following, in substance and in part: John Doe 1 and John Doe 2 (collectively, the "Victim Group") had been standing in the vicinity of Roosevelt Avenue and 82nd Street in

Queens, New York when John Doe 1 asked an unknown male who was wearing jeans and a white jacket (the "Assailant") for a cigarette lighter.   Shortly thereafter, the Assailant approached the Victim Group and stated, in sum and substance, that the Assailant was a member of 18th Street.   The Assailant asked the Victim Group if they were in a gang, and John Doe 1 responded that they were not in a gang.   The Assailant then struck John Doe 1 across the face with a closed fist.   A group of approximately ten unknown males (the "Assailant Group") quickly approached the Victim Group and struck John Doe 1 with fists, kicked John Doe 1 and attacked John Doe 2.   One of the males in the Assailant Group struck John Doe 1 in the face with an unknown item that shattered.   John Doe 1 felt significant pain and swelling on the right side of his face.

13.     Photographs of John Doe 1 after the attack show that he sustained injuries including multiple lacerations to his face.

14.     John Doe 2 was separately interviewed by law enforcement.   John Doe 2 advised the following, in substance and in part: the Victim Group had been standing in the vicinity of Roosevelt Avenue and 82nd Street in Queens, New York when John Doe 2 asked a passerby for a cigarette lighter.   Shortly thereafter, the Victim Group was approached by the Assailant, described as a male with brown skin and a beard, and who was wearing a white jacket.   The Assailant asked the Victim Group what gang they belonged to, and John Doe 2 responded that they were not in a gang.   The Assailant then struck John Doe 1, and John Doe 2 attempted to intervene.   The Assailant Group then quickly approached the Victim Group and struck John Doe 2 with fists, kicked John Doe 2 and attacked John Doe 1.   A friend of the Victim Group, John Doe 3, exited a location in the vicinity of Roosevelt Avenue and

82nd Street and was also attacked by the Assailant Group.   The Assailant Group fled.   John Doe 2 suffered bruising to his face and observed a large cut on the face of John Doe 1.

15.    I have observed video surveillance footage leading up to and following the assault of John Doe 1.   The video shows that at approximately 6:22 p.m., the Victim Group was standing on the sidewalk in the vicinity of Roosevelt Avenue and 82nd Street, engaged in conversation.   The video then shows the Assailant—a male wearing a white jacket, black pants, a black hat, yellow work boots and a face mask below his chin—walk down Roosevelt Avenue towards the Victim Group.   As reflected on video surveillance footage, a short conversation ensued between the Assailant and the Victim Group, which culminated in the Assailant striking John Doe 1's face with a closed fist.   John Doe 2 pushed the Assailant, causing the Assailant to fall backwards towards the ground.   Shortly thereafter the Assailant Group approached the Victim Group and began to strike John Doe 1 and John Doe 2 about the head and body.

16.    As reflected on the surveillance video, one male in the Assailant Group lifted a large glass bottle and threw it at John Doe 1.   The bottle appeared to strike John Doe 1 and then fall to the ground and roll.   The Assailant picked up the glass bottle and struck John Doe 1 in the face as other members of the Assailant Group repeatedly struck John Doe 1 and John Doe 2.   John Doe 1 then retreated into an open door on Roosevelt Avenue.

17.    Following the December 31, 2021 assault of John Doe 1 and John Doe 2, a male ("Individual-1"), who has known the defendant ERICK ESTRADA for more than six months and had previous face-to-face interactions with ESTRADA, viewed the above described surveillance video.   Individual-1 identified "ERIC ESTRADA" as the Assailant depicted in the surveillance video and identified ESTRADA in a still photograph of the

Assailant captured from surveillance video.   Further, an NYPD officer who has had previous in-person interactions with ESTRADA viewed the aforementioned still photograph of the Assailant and positively identified ESTRADA as the Assailant.   In addition, I have reviewed the surveillance footage and photographs of ESTRADA in the NYPD database and other law enforcement databases, and ESTRADA closely resembles the Assailant as he was captured on surveillance footage of the December 31, 2021 incident.

18.    Specifically, the defendant ERICK ESTRADA and the Assailant appear to be the same approximate height, weight and have a similar physical build.   Based on this, and Individual-1's identification, I have therefore determined that ESTRADA is the Assailant, the person who assaulted John Doe 1 and John Doe 2.   Photographs of ERICK ESTRADA and the Assailant are attached as Exhibit A.

19.    Furthermore, a law enforcement analysis of social media accounts identified information, which I believe, based on my training, experience and participation in this investigation, to be a reference to the defendant ERICK ESTRADA's membership in 18th Street.   For example, I believe ESTRADA to be the user of Facebook account "Henry Estrada" (the "Account"), which posted numerous photographs depicting ESTRADA displaying hand signs, which I know, based on my training, experience and participation in the investigation, to be 18th Street hand signs.   The Account also posted photographs of: (1) ESTRADA and four other males, all of whom are making an 18th Street hand sign; (2) approximately 14 males, three of whom are wearing shirts with "18" written on it; and (3) a gold chain necklace with "18" written on it.

WHEREFORE, your deponent respectfully requests that the defendant ERICK ESTRADA, be dealt with according to law.

I further request that the Court order that this complaint and arrest warrant be sealed until further order of the Court.   These documents discuss an ongoing criminal investigation that is neither public nor known to the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

GABRIEL NACELEWICZ
Task Force Officer, Federal Bureau of
Investigation

Sworn to before me by telephone this
20 day of April, 2022

THE HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

# Exhibit A



