UNITED STATES DISTRICT COURT
EASTERN  DISTRICT OF NEW YORK

-----------------------------------------------------------x

UNITED STATES OF AMERICA,

         -against-                                  22-CR-0234 (HG)


ERICK ESTRADA,
                             Defendant.
-----------------------------------------------------------x


MEMORANDUM OF LAW IN AID OF SENTECNING FOR
ERICK ESTRADA



                                                                                    Christopher Wright
                                                                                    Wright Law
                                                                                     299 Broadway
                                                                                       Suite 708
                                                              New York, NY 10007

### I.   Preliminary Statement

The undersigned respectfully submits this letter in advance of Erick Estrada's ("Estrada" or "Mr. Estrada") sentencing proceeding, which is scheduled for July 28, 2023, following his February 9, 2023 guilty plea, to the sole count on the Indictment: Assault In-Aid-of Racketeering in violation of 18 U.S.C. § 1959(a)(3).

Erick Estrada is a beloved son, sibling, and a father to a young nine-year old daughter. At the pivotal age of 30, Erick now finds himself on a hopeful road to redemption and the reclamation of his young life. As detailed below Erick was born into crushing economic poverty and was raised in a profoundly emotionally troubled family; having spent a great deal of his life struggling to overcome intractable challenges. He makes no excuses for his mistakes and wakes up every morning in his desolate jail cell with the crushing awareness of the gravity and consequence of his criminal conduct; conduct for which he readily accepted responsibility, pled guilty and stands ready to be sentenced.

The U.S. Probation Department ("Probation") recommends a sentence of 24 months; which is significantly below Probation's own U.S.S.G. calculation of Erick's guideline range of 33 months to 41 months. *See* Presentence Report dated April 6, 2023 ("PSR") at ¶77 and page 3 of 3 (Sentence Recommendation). The defense joins in Probation's sage sentencing recommendation and humbly requests the Court sentence Erick to a below guideline range sentence; a sentence that is sufficient and not greater than necessary thereby actualizing the goals set forth in 18 U.S.C. § 3553(a).

### II.   Legal Standard

As this Court is undoubtedly aware, the United States Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005), has reshaped the way a sentencing judge can impose a sentence. The sentencing court may consider the U.S.S.G guideline range, as well as any basis to depart from that range. However, the court is no longer required to impose a sentence within that range. In fact, the federal sentencing guidelines are but one factor among several in determining an appropriate sentence. *Kimbrough v. United States*, 552 U.S. 85, 109 (2007).

The guidelines are only the "starting point and initial benchmark…" *Id., citing Gall v. United States*, 552 U.S. 38, 50 (2007). "Sentencing courts are not to 'presume that the Guidelines range is reasonable,' and instead they 'must make an individualized assessment based on the facts presented.'" *United States v. Thavaraja*, 740 F.3d 253, 259 (2d Cir. 2014) (internal citations omitted). It is the sentencing judge who has the advantage of familiarity with the details of the case and can best evaluate the import of the § 3553(a) factors. *Id., Kimbrough*, 552 U.S. at 109, *citing Gall*, 552 U.S. at 51.

In determining a sentence that is "sufficient, but not greater than necessary," the first of those factors the judge must consider is "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Without a doubt, the breadth of this factor alone extends far beyond the guidelines and implores the sentencing judge to consider the unique circumstances and characteristics of the defendant in each case. A consideration of those

characteristics, along with the remaining six factors,[1] may render sentences that do not fit within the guidelines, yet are fair and meet the goals of sentencing set forth in § 3553(a)(2).

Therefore, the Court may not simply presume that the Guidelines range is reasonable. *Gall*, at 50. Rather, the Court must make an individualized assessment based on the facts presented. From its unique vantage, the Court may conclude that, despite the guidelines, "in a particular case, a within-Guidelines sentence is 'greater than necessary' to accomplish the goals of sentencing. . ." *Kimbrough*, 552 U.S. at 101, *citing* 18 U.S.C. § 3553(a). The not "greater than necessary" language of the federal sentencing statute incorporates the need for the sentence to "reflect the seriousness of the offense," "promote respect for the law" and "provide just punishment for the offense." 18 U.S.C. § 3553(a). Indeed, as the Supreme Court suggested in *Gall*, a sentence of imprisonment may not promote respect for the law if it appears unduly harsh in light of the real conduct and circumstances of the particular case. *Gall*, at 54; *see also Rita v. United States*, 551 U.S. 338, 351 (2007) (observing that district court may consider arguments that "Guidelines sentence itself fails properly to reflect § 3553(a) considerations").

### III.     Offense Conduct and Acceptance of Responsibility

As described in the Presentence Report ("PSR"), Erick is a member of the 18th Street Gang, which is a gang located throughout Queens that engages in all manner of racketeering activity. PSR ¶¶3-6. Relevant here, Erick was an integral figure in a violent gang assault that occurred on December 31, 2021, along Roosevelt Avenue in Queens, NY. PSR ¶9-11. Erick along with other 18th Street Gang members beat two individuals, and more specifically Erick threw a bottle in the victim's face causing serious physical injury. PSR ¶10-11.

Erick was arrested for the instant offense on May 4, 2022, and in the course of a debriefing with federal agents he admitted to his factual guilt in this assault and conceded his involvement with 18th Street Gang. PSR ¶14. Erick's prompt and immediate acceptance of responsibility is illustrative of his desire for accountability and unequivocal recognition of his guilt.

Erick is acutely aware that his 18th Street Gang membership placed innocent people at great risk and the tragic assault in this case graphically illustrates that peril. He has expressed profound remorse for this assault and readily admits that gang-membership is "*not* a victim-less crime." Put simply, Erick did not calculate the risks inherent in his membership in a violent street gang like 18th Street Gang. Erick in no-way seeks to minimize his offense conduct. He categorically accepts his guilt and more meaningfully he accepts his shameful role as a member of a violent street gang.

---

[1] The seven factors are (1) the nature and circumstances of the offense and the history and characteristics of the offender; (2) the need for the sentence imposed to reflect the goals of sentencing set forth in § 3553(a)(2); (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims. *See* 18 U.S.C. § 3553(a).

IV.  **History and Characteristics**

   A. **Erick's Upbringing - "Sad Childhood"**

Erick was born in 1992 in Mexico City, Mexico and was promptly abandoned by his parents, Daniel Estrada Castaneda and Gloria Mosso Ortega, who fled Mexico for the United States to pursue economic opportunities. PSR ¶¶41,43. Erick was left alone and in the care of his paternal grandmother, Marcela Estrada Castaneda, who raised him in abject poverty in the small Mexican hilltop town of Tlapa. PSR ¶43. To describe Erick's tragic, destitute and heartbreaking childhood as Dickensian, would be generous; by any measure Erick was born into an awful and cruel world.

Erick describes his childhood as profoundly "sad", as much of his childhood was marked by severe emotional abuse, physical abuse and sexual abuse. PSR ¶¶44-45. His elderly grandmother endeavored to raise Erick and his siblings but she was often overwhelmed leaving Erick alone and vulnerable to abuse by other children. PSR ¶45. In particular, an older brother was especially brutal in continuous violent assaults upon young Erick. Id. Tragically, Erick had no adult to turn to for help as his own parents had long since abandoned him to go the United States.

Particularly disquieting for young Erick was a neighbor who was a sexual predator who had raped other children in his small Mexican town. PSR ¶47. This particular neighbor tried to rape Erick on multiple occasions, mercifully Erick was able to fend off the rapist. Id. Nonetheless, those sexual assaults haunt Erick and to this day as he continues to harbor deep "rage". Id. Again, Erick had no adult to turn to for help since his parents were absent, and Erick reports that local Mexican law enforcement were utterly ineffectual and completely apathetic.

When Erick turned thirteen he was finally reunited with his parents when he joined his parents in the United States living in the Sunnyside neighborhood of Queens, NY. PSR ¶49. However, this reunion with his parents turned out to be decidedly bittersweet as his parents were rather indifferent to their son's arrival and had established lives without him. Id. Erick felt terribly alienated and alone at this time living in Queens and decided to return home to Mexico to live with his grandmother. PSR ¶49-50. Erick eventually returned to the United States when he was about eighteen years old, as he saw no hope in Mexico due to its crushing economic destitution. PSR ¶50.

   B. **Erick's Adulthood and Family Life**

Tragically for Erick, his adulthood has been marked by the same isolation and remoteness that scarred his adolescence as he has never been able to develop a close relationship with either his mother or his father. PSR ¶52. Despite the alienation from his parents, Erick's mother, Gloria, writes the Court extolling her son's virtues as "responsible, hard-working and respectful." Ex. A at 01.[2] His mother further praises Erick as a father "he has a daughter who is dying to hug him" who terribly misses Erick and she emphatically writes "She [Erick's daughter] loves my son." Id.

Erick has a 9-year old daughter, AE,[3] from a prior girlfriend named Esperanza Solana Celestino and they live in the Bronx, NY. PSR ¶55. Prior to his arrest, AE spent every weekend

---

[2] Attached as Exhibit A are a collection of letters from Erick's family and friends, which are bate-stamped for ease of reference.

[3] Pursuant to U.S. District Court, Eastern District of New York rules on redactions and privacy, I have only included the initials of the minor child and redacted any mention of her name in any attached letters.

4

with Erick, and Esperanza describes Erick has having been a good father to AE. Id. Erick's current absence due to his incarceration has been emotionally and financially difficult for both AE and Esperanza. Id. Esperanza remains steadfast in her support for Erick as he is a "good person and father" and that he is "kind, sociable and likes people." PSR ¶56. She is emphatic and quite direct in her request to the Court regarding the proper sentence "Your Honor release the defendant to be present for his daughter, whom he needs to provide for." Id.

Erick's daughter, AE, is evidently an incredibly bright and precocious 9-year old girl as she writes the Court a thoughtful, nuanced and forthright letter about her father:

> My dad might not be the best dad but besides that he was with me in my hardest moments. My dad would always play with me we would laugh together as we did my homework we also would play tag in the park after school. I miss him so much my dad means the world for me sometimes I think he would never see me again but I still hope he will get to see again that's why I love my dad so much.
> Ex. A at 02.

Remarkable about that letter, is that Erick undisputedly tried to be a loving parent to his daughter; wholly unlike his own parents who utterly abandoned him and unreservedly had forsaken him. Sadly, AE will almost assuredly grow up without Erick in her life as his deportation to Mexico is all but certain upon his eventual release from Federal prison.

Erick is fortunate enough to have six siblings, some of whom he is quite close with and have been supportive of Erick throughout this difficult time in his life. His younger sister, Daysi Estrada, writes very movingly of her big brother as "a caring person. He cares for his family one hundred percent" and describes Erik "as a loving father to an nine year old girl… [AE] is very sad and depressed without him." Ex. A at 03.

Another sister, Jennifer Estrada, strikes a similarly redemptive cord about Erick, fondly remembering him as taking care of and supporting his fellow siblings. Ex. A at 04. Jenifer praises Erick as a great father and that AE "loves him very much. She is very affected by not being with her father… she is very depressed for not seeing him." Id. Like other family members Jenifer is categorical in her support for Erick "My brother Erick Estrada is a good person and we love him." Id.

An extraordinarily compelling letter is from Erick's oldest sibling, Victor Daniel Estrada, who lives in Tlapa, Mexico.[4] Ex. A at 5. Victor who has known Erick longer than any other sibling states that the instant offense conduct as in stark contrast to the Erik he knew and that his brother "was always a good brother, a good son." Id. Victor has abundant hope and love for his kid brother Erick:

> I ask you Mr. Judge not to deny my brother the happiness of being with his family, especially his daughter, who misses him and needs him…I know he is not bad and he is sorry for his mistakes, we just want him to leave [jail] as soon as possible to put him on the path of good… Mr. Judge I hope you make the best decision and give my brother the opportunity to be with us, we miss him because he was always a good

---

[4] This letter was originally written in Spanish, quotes herein are from an English translation.

5

brother, a good son out of the ordinary, just for the moment that you have an excellent day. Kind regards.
Id.

The assembled letters exalt Erick's dogged commitment to being a kind and attentive father to his young daughter and they demonstrate the genuine love his siblings have for their brother.

Ultimately, the abundant love demonstrated by Erick's kind and generous family turned out to be bittersweet, albeit due to his regretful decision to engage in the instant offense conduct. Paradoxically, the very people who love Erick the most, his family, have suffered the most as a result of his criminal conduct and subsequent incarceration. In particular, he has placed his young daughter in the terribly precarious position of losing her father for many years.

Erick deeply feels the betrayal, disgrace, and humiliation his behavior has caused his family as well as the incalculable harm that senseless gang-violence visits upon society. Despite his current predicament and his unquestionably difficult childhood, Erick counts himself very lucky that he has so many good people who love him and want to help him as he struggles through life and moves on from the instant criminal case.

### C. Erick's Childhood Emotional/Physical/Sexual Abuse and Adult Substance Abuse

As discussed above, Erick faced continual physical abuse as a child and was the target of sexual predator. After his parents abandoned him, Erick had to face continual years of awful emotional neglect and physical abuse by other boys in his small Mexican town. Most assuredly such child abuse has caused incalculable harm upon Erick's emotional development. In addition, Erick was the victim of an unrepentant sexual predator in his neighborhood who targeted young boys. That troubling childhood haunts Erick to this day, and he eagerly wants to avail himself of mental health treatment once he is sentenced to jail.

As is the case with all too many people, Erick has sought to self-medicate his shame and sadness by abusing narcotics and alcohol. Erick started heavy drinking alcohol at around age 12 and continually abused alcohol up until his instant arrest. PSR ¶¶48, 65-66. His consumption of marijuana first began at age 8 or 9 and increased significantly throughout his adulthood. PSR ¶¶65-66. Erick first used cocaine at around age 10, and continuously abused cocaine up until his arrest in this case. PSR ¶¶65-66.

Erick is committed to entering substance abuse treatment once he is transferred out of MDC jail and is acutely aware that he will have to lead a sober life once he is ultimately released from prison. Notably, Erick's involvement with the instant criminal conduct coincided with his heaviest abuse of cocaine and alcohol.

### V. Conclusion

.       As mentioned at the outset of this memorandum, we respectfully request the Court impose a sentence in accord with the U.S. Probation Department recommendation which is below the guideline range of 33 months to 41 months; a sentence that appropriately reflects all of the critical

6

18 U.S.C. 3553(a) factors. A lengthy quote from the PSR crystalizes the rationale for a below guideline range sentence by the Court:

> The defendant had a difficult childhood, one in which he felt neglected by his absent parents and busy grandmother, he endured childhood bullying by peers, sporadic physical abuse by his older brother, and sporadic, attempted sexual abuse by a neighbor known to have raped a child, and he was was exposed to alcohol, cocaine and marijuana as a minor child by his neighbors. Your Honor may consider these factors as mitigating at sentencing.
> PSR ¶ 95.

First, Erick has continued to show remorse and reflect on how his criminal conduct affected the victims, society, his family and his young daughter in particular; and a sentence below the guideline range will undoubtedly serve as a deterrent against any future recidivism. Erick has confided that the last year at MDC jail has been deeply impactful upon him and is unyielding in his desire to turn his life around and never return to jail.

Second, Erick's extraordinarily difficult childhood and deeply troubled family life is an obvious factor that should be considered in determining an appropriate sentence. The PSR and attached letters all corroborate his difficult upbringing. Courts will often consider how adverse socio-economic conditions affect defendants and their relationship to the criminal justice system. *See U.S. v. Bannister*, 786 F. Supp. 617 (EDNY 2011). By any measure, Erick grew up in a chaotic and neglected environment dominated by parental abandonment and awful physical abuse and sexual abuse. Erick's traumas form such child abuse most assuredly contributed to his adulthood substance abuse.

Third, Erick's drug abuse and mental health is another basis for the requested sentence. Sentencing courts are mandated to consider the need to provide medical care for defendants and Erick's substance abuse and childhood abuse certainly qualify. *See* 18 U.S.C. § 3553(a)(2)(D). As discussed in his PSR report Erick has abused alcohol, marijuana, and cocaine for many years. Erick would greatly benefit from mental health treatment and substance abuse counseling during his incarceration. Erick acknowledges that his substance abuse has contributed to his poor decision making and he readily accepts that alcohol, marijuana, and cocaine were awful ways to "treat" his childhood trauma. To that end we respectfully request the Court consider his need and desire to receive treatment for his drug abuse and his underlying struggle with depression.

Fourth, it is also relevant that Erick has been incarcerated at the MDC jail for over 1 year during the horrid COVID-19 conditions of confinement. Those conditions may be considered when meting out an appropriate sentence. *See e.g. U.S. v. Carty* 2654 F.3d 191 196 (2d Cir. 2001) (presentence confinement conditions may in appropriate cases be a permissible basis for a lesser sentence).

As a final thought, the attached character letters demonstrate that Erick is clearly a complex man who has struggled mightily against debilitating childhood traumas; and yet Erick endures and is fortunate to have a loving family ready to embrace him with open arms and support him upon his eventual release from jail. Erick is not beyond redemption, rather he is a young man filled with an abundance of compelling qualities that speak to his hope and his good character. Erick's

"goodness" is a consistent theme found in each of the submitted letters, which speaks to his essential decency.

      We respectfully request the Court sentence Erick to a below guideline sentence that the Court deems to be just and appropriate. Although Erick endured unspeakable trauma as a child and has spent much of his adult life struggling with drug abuse he makes no excuses for his criminal conduct. He accepts full responsibility for the instant offense without any qualifications. Erick's everlasting hope is that this painful experience will afford him the chance to embrace sobriety and be a positive role model in the life of his young daughter.

                                            Sincerely,
                                            /s/
                                            Christopher Wright
                                            Counsel for Erick Estrada